

I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY
FIRST CLASS MAIL POSTAGE PREPAID, TO ALL COUNSEL
(OR PARTIES) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF
RECORD IN THIS ACTION ON THIS DATE,

DATED: 8-04-06

DEPUTY CLERK

Scan only "0"

FILED - SOUTHERN DIVISION
CLERK, U S DISTRICT COURT

AUG 04 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                      DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| CURTIS CANADY,<br><br>       Petitioner,<br><br>       v.<br><br>D.L. RUNNELS, Warden,<br><br>       Respondent. | Case No. CV 05-6551-DDP (MLG)<br><br>REPORT AND RECOMMENDATION OF<br>UNITED STATES MAGISTRATE JUDGE |

DOCKETED ON CM

AUG - 7 2006

BY                  040

## I.   Background

### A.   Facts Of The Offenses[1]

#### 1.   DeCatur Murder and Attempted Murders

This is a petition for writ of habeas corpus brought by a state prisoner pursuant to 28 U.S.C. § 2254.  Petitioner Curtis Canady was a member of the Playboy Hustler Crips ("the Playboy gang"), which was a rival of the Fifty-Ninth Street Hoover Crips ("the Hoover gang").  On the morning of July 29, 1998, Petitioner and co-defendants Taray

---

[1]   The facts are taken from the opinion of the California Court of Appeal in *People v. Johnson and Canady*, Case Nos. B151097, B153295, the clerk's transcript ("CT") and the reporter's transcript ("RT").



Johnson and Ronald Conley,[2] were riding in a stolen car in Hoover gang territory.  They were looking for Dumar Fisher, a Hoover gang member.  Petitioner and his co-defendants found Fisher in a parked car with fellow Hoover gang members James Foster and Danielle DeCatur.  Danielle Decatur's sister, Falisha DeCatur, was also in the car.

After passing Fisher's car once, Petitioner, Johnson, and Conley returned, and stopped along side Fisher's car.  Someone said, "This is for you, Dumar."  Petitioner and his co-defendants then opened fire on the occupants of Fisher's car and drove away.  (RT at 878-79, 898, 940, 943, 1016, 1133-36, 1147-48, 1208).  Danielle DeCatur was shot and died of her wounds.  (RT at 1217).  Foster was shot in the arm.  (RT at 1020, 1096-97).  Falisha DeCatur incurred injuries to her arm from shattered window glass.  (RT at 882-84).

After the shooting, Petitioner and his co-defendants returned to the apartment of Petitioner's then girlfriend, Shonta Whitten, where they changed their clothes.  When Whitten later learned of the DeCatur murder, she confronted Petitioner and his co-defendants.  They admitted they had killed Danielle DeCatur, and explained that they had intended to kill one of her male companions.  Months later, Whitten overheard Petitioner, Johnson and Conley discussing the murder, during which time Petitioner made statements admitting culpability.

Whitten eventually telephoned the police anonymously and told them Petitioner was responsible for the Danielle Decatur murder.

---

[2]   Johnson was a member of the Playboy gang.  (Answer to Petition for Writ of Habeas Corpus ("Answer"), Ex. B at 82).  Conley was a member of an affiliated gang, the Playboy Hustlers Styles gang. (Answer, Ex. 83).

1  Police mistakenly believed Petitioner's current girlfriend had been
2  the anonymous caller, so they confronted her with the statement they
3  believed she had made.  Petitioner thereby learned that someone had
4  made the call to the police and concluded that Whitten had been the
5  caller. Petitioner, who had by this time been arrested, repeatedly
6  telephoned Whitten from jail, accused her of talking to the police
7  and threatened to have her killed.  The police identified Whitten as
8  the anonymous caller and interviewed her at her apartment and again
9  at the police station, where they secretly videotaped her. Whitten
10 feared for her life, but repeated her accusations against Petitioner,
11 Johnson, and Conley.  She eventually recanted, denying at trial all
12 of her statements to the police.

13      When interviewed by police, Foster identified Petitioner and
14 Johnson from photographic displays.  (RT at 1087, 1090-91).  Foster
15 knew both Petitioner and Johnson because he had played basketball
16 with Petitioner and had seen Johnson playing basketball.  Foster told
17 police that Petitioner had been the shooter and that Johnson was also
18 in the car.  (RT at 1087-90, 1265).  Falisha DeCatur also identified
19 Petitioner to police (RT at 889-92, 930, 1265), as did a neighbor
20 (Alex Liggins) who had witnessed the crime (RT at 949-52, 970-71,
21 989-91, 1265).

22      After offering a defense of mistaken identification, Petitioner
23 was convicted of one count of first degree murder (Cal. Penal Code
24 § 187) with a drive-by shooting special circumstance (Cal. Penal Code
25 § 190.2(a)(21)), three counts of premeditated and deliberated
26 attempted murder (Cal. Penal Code §§ 187(a)/664), one count of making
27 terrorist threats (Cal. Penal Code § 422), and one count of witness
28 intimidation (Cal. Penal Code § 136.1(c)(1)).  The jury further found

true the allegations that Petitioner personally and intentionally used and discharged a firearm (Cal. Penal Code §§ 12022.5(a)(1), 12022.53(b), 1203.06(a)(1), 12022.53(c) and that Petitioner discharged a firearm caused death or great bodily injury (Cal. Penal Code § 12022.53(d)). The jury also found true great bodily injury enhancements (Cal. Penal Code § 12022.7(a)), gang enhancements, and "principal armed" enhancements (Cal. Penal Code §§ 186.22(b)(1), 12022(a)(1)).[3] Petitioner was sentenced to life in prison without the possibility of parole, plus three consecutive life terms and additional terms totaling ninety-nine years to life. (CT at 578-88).

On June 24, 2002, the California Court of Appeal modified Petitioner's sentence, but otherwise affirmed Petitioner's conviction. (Answer to Petition for Writ of Habeas Corpus ("Answer"), Ex. B). On September 11, 2002, the California Supreme Court denied direct review. (Answer, Ex. C).

Next, Petitioner filed petitions for writs of habeas corpus in the Los Angeles County Superior Court, California Court of Appeal, and California Supreme Court. (Lodgments 5 & 6; Answer Ex. G). On December 29, 2003, while a petition for writ of habeas corpus was pending in the California Supreme Court, Petitioner filed with this Court a Petition for Writ of Habeas Corpus. This Court dismissed the Petition, finding that the Petitioner's claims were unexhausted and that dismissal was required as a matter of comity. On September 1, 2004, the California Supreme Court denied Petitioner's state habeas

---

[3]    Petitioner, along with co-defendant Johnson, were also charged in an unrelated case, of the robbery and murder of Andrew Ellsworth. The jury was unable to reach a verdict as to Petitioner; reaching an 11 to 1 vote in favor of guilt. A mistrial was declared as to Petitioner, and these charges were subsequently dismissed. The jury found co-defendant Johnson not guilty of these offenses.

1   petition.   (Answer, Ex. H).

2       Petitioner initiated the present action by lodging a Petition

3   for Writ of Habeas Corpus ("Petition") on August 31, 2005, and filing

4   the same with this Court on September 6, 2005.  Petitioner asserts

5   the following claims for relief:

6       Ground One:  Trial counsel provided ineffective assistance

7           by failing to: (a) investigate fingerprint evidence;

8           (b) challenge an allegedly biased juror; and (c)

9           offer an eyewitness' statements into evidence.

10      Ground Two:  Appellate counsel provided ineffective

11          assistance by failing to raise the issue of

12          ineffective assistance of trial counsel.

13      Ground Three:  The prosecutor violated due process by: (a)

14          failing to disclose fingerprint evidence to the

15          defense; (b) arguing to the jury that there were no

16          fingerprints in the shooters' car; and (c) presenting

17          gang evidence in an improper manner.

18      Ground Four:  Petitioner was denied his right to an

19          impartial jury due to the presence of a biased juror

20          on the jury.

21      Ground Five:  The trial court violated due process by

22          improperly restricting cross-examination of the

23          People's gang expert.

24      Ground Six:  The trial court violated due process and the

25          right to a jury trial by refusing to give a requested

26          jury instruction on rejecting unreliable expert

27          opinions.

28      Ground Seven:  The trial court violated Petitioner's

5

1          constitutional rights by denying his request for
2          confidential juror information.
3      Ground Eight:   The evidence was insufficient to support
4          the great bodily injury finding as to victim Falisha
5          Decatur.
6      Ground Nine:   The trial court violated Petitioner's
7          constitutional rights by instructing the jury with
8          CALJIC No. 17.41.1.
9   Respondent filed an Answer and Petitioner filed a Traverse.   This
10  action now stands submitted.

11

12  II.   **Standard of Review**

13       Under the Antiterrorism and Effective Death Penalty Act of 1996
14  ("AEDPA"), 28 U.S.C. § 2254(d), a federal court may grant a writ of
15  habeas corpus to a state prisoner with respect to a claim that was
16  adjudicated on the merits in state court only if the state courts'
17  decisions were "contrary to, or involved an unreasonable application
18  of, clearly established Federal law, as determined by the Supreme
19  Court of the United States" or if the ruling was "based on an
20  unreasonable determination of the facts in light of the evidence
21  presented" in the state courts.

22       A state court decision is "contrary to" clearly established
23  federal law if the state court failed to apply the correct
24  controlling authority from the Supreme Court. *Williams v. Taylor*,
25  529 U.S. 362, 405-06 (2000). The Supreme Court explains that a state
26  court decision is "contrary to" clearly established federal law if
27  the state court "applies a rule that contradicts the governing law
28  set forth in [the Supreme Court's] cases" or if it "confronts a set

6

1 | of facts that are materially indistinguishable from a decision of
2 | this Court and nevertheless arrives at a result different from our
3 | precedent." *Early v. Packer*, 537 U.S. 3, 8 (2002)(quoting *Williams*,
4 | 529 U.S. at 405-06).  A state court need not cite or even be aware
5 | of Supreme Court precedents, "so long as neither the reasoning nor
6 | the result of the state-court decision contradicts them." *Mitchell*
7 | *v. Esparza*, 540 U.S. 12, 16 (2003)(citing *Packer*, 537 U.S. at 7).

8 |     A state court decision involves an "unreasonable application of"
9 | clearly established federal law if the state court identifies the
10 | correct governing legal principle from the decisions of the Supreme
11 | Court, but unreasonably applies that principle to the facts of the
12 | case.  *Williams*, 529 U.S. at 407-08, 413.  Under this standard, a
13 | habeas court may not issue the writ simply because that court
14 | concludes "in its independent judgment" that the state court decision
15 | is incorrect or erroneous.  *Williams*, 529 U.S. at 410, 412; *Woodford*
16 | *v. Visciotti*, 537 U.S. 19, 24-25 (2002).  The reviewing court must
17 | find that the state court's application of clearly established law
18 | was objectively unreasonable.  *Williams*, 529 U.S. at 409.

19 |     A state court decision is based on an unreasonable determination
20 | of the facts if "an appellate panel, applying the normal standards
21 | of  appellate  review,  could  not  reasonably  conclude  that  the
22 | finding[s] [are] supported by the record." *See Taylor v. Maddox*, 366
23 | F.3d 992, 1000 (9th Cir.), *cert. denied*, 125 S.Ct. 809 (2004).  Once
24 | a  state  court's  fact-finding  process  survives  an  "unreasonable
25 | determination" challenge, the state court's findings of fact are
26 | presumed to be correct.  *Id.*; 28 U.S.C. § 2254(e)(1).  To overcome
27 | this  presumption,  a  habeas  petitioner  must  show  by  clear  and
28 | convincing evidence that the state court's factual findings were in

1   error.  *See* 28 U.S.C. § 2254(e)(1); *Taylor*, 366 F.3d at 1000 ("State-
2   court fact-finding may be overturned based on new evidence presented
3   for the first time in federal court only if such new evidence amounts
4   to clear and convincing proof that the state-court finding is in
5   error").

6       The claims raised in the instant Petition were raised before the
7   California Supreme Court, but that court did not issue a written
8   opinion.  (Answer, Ex. C).  Nevertheless, "[w]here there has been one
9   reasoned state judgment rejecting a federal claim, [federal courts
10  are to presume] later unexplained orders upholding that judgment or
11  rejecting the same claim rest upon the same ground."  *Ylst v.*
12  *Nunnemaker*, 501 U.S. 797, 803 (1991).  The California Court of Appeal
13  rejected the claims raised in Grounds Five, Six, Seven, Eight, and
14  Nine of the Petition in a written decision.  (Answer, Ex. B).  Thus,
15  with respect to those claims, this Court will consider the reasoning
16  of the California Court of Appeal to determine whether the California
17  Supreme  Court's  decision  is  contrary  to,  or  an  unreasonable
18  application of, federal law.  Because there is no reasoned decision
19  addressing the merits of the claims raised in Grounds One, Two,
20  Three,  and  Four  of  the  Petition,  this  Court  must  perform  an
21  independent review of the record to determine whether the California
22  Supreme  Court's  decision  was  objectively  unreasonable  under
23  controlling federal law.  *Himes v. Thompson*, 336 F.3d 848, 853 (9th
24  Cir. 2003)("The 'independent review' of the record required when a
25  state  court  supplies  no  *ratio decidendi*  must  be  carefully
26  distinguished  from  'independent  review'  of  the  constitutional
27  question ..."); *see Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir.
28  2000).  Although the record is reviewed independently, a federal

court nevertheless defers to the state court's ultimate decision. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

## III.   Discussion and Analysis

### A.   Ground One:   Ineffective Assistance of Counsel

Petitioner contends that trial counsel provided ineffective assistance by failing to: investigate exculpatory fingerprint evidence; challenge an allegedly biased juror; and offer an eyewitness' statements into evidence.

The Sixth Amendment right to counsel guarantees not only assistance, but effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).   To prevail on a claim of ineffective assistance of counsel, a petitioner must establish two things:   (1) counsel's performance fell below an "objective standard of reasonableness" under prevailing professional norms; and (2) the deficient performance prejudiced the defense, *i.e.*, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Id*. at 687-88, 694.   Both deficient performance and prejudice must be established to prevail.   If it is clear that the petitioner cannot establish prejudice, the claim must be denied regardless of whether counsel's performance was deficient.   *Id*. at 697.

### 1.   Fingerprint Evidence

Petitioner contends that trial counsel was ineffective for failing to investigate exculpatory fingerprint evidence from the stolen Toyota Camry that was used by the shooters in the Decatur shooting.   Police recovered five fingerprints from the Toyota Camry, but identified only two of the fingerprints.   (Amended Petition, Ex.

1  A at 786). One fingerprint belonged to the owner of the Toyota Camry

2  and the other fingerprint belonged to a police officer. *Id.* Police

3  determined that the three remaining fingerprints did not belong to

4  Petitioner, Johnson or Conley. *Id.*

5      Trial counsel's failure to investigate the inconclusive nature

6  of the fingerprints did not amount to ineffective assistance of

7  counsel. Shanta Whitten indicated that Petitioner had been wearing

8  cotton gloves at the time of the shooting. (CT at 143). Given this

9  potentially sound rationale, trial counsel's decision not to

10 investigate the fingerprint evidence was a reasonable tactical choice

11 to which the Court must defer. *See Strickland*, 466 U.S. at 689

12 (there is a strong presumption that challenged actions were sound

13 trial strategy).

14     Moreover, the presence of other fingerprints does nothing to

15 undermine the eyewitness statement of Foster, who identified

16 Petitioner as one of the shooters. Whitten also told police that

17 Petitioner admitted killing Danielle Decatur, albeit unintentionally.

18 Even if the fingerprints were matched to a person, there is no

19 evidence that any other person was implicated in the shootings.

20 Thus, the failure to investigate the presence of other fingerprints

21 did not prejudice Petitioner.

22              **2.   Failure to Challenge Juror No. 4**

23     Petitioner claims that trial counsel was ineffective for failing

24 to seek removal of Juror No. 4 for bias. Petitioner's claim lacks

25 merit because he cannot establish deficient performance.

26     As discussed more fully below, the trial court and counsel made

27 a thorough inquiry into Juror No. 4's ability to serve as an

28 impartial juror in Petitioner's trial. The record established that

1   Juror No. 4 had no bias against Petitioner and was fully able to
2   discharge his duty to deliberate and decide the case based on the
3   evidence.   Under these circumstances, a motion to remove Juror No.
4   4 for cause would have been futile.  *See Wilson v. Henry*, 185 F.3d
5   986, 990 (9th Cir. 1999)(to show prejudice under *Strickland* from
6   failure to file a motion, petitioner must show that (1) had his
7   counsel filed the motion, it is reasonable that the trial court would
8   have granted it as meritorious, and (2) had the motion been granted,
9   it is reasonable that there would have been an outcome more favorable
10  to him); *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) (failure
11  to take futile action can never be deficient performance).

12                  **3.   Exculpatory Eyewitness Statement**

13       Petitioner claims that trial counsel was ineffective for failing
14  to offer into evidence an impeaching statement made by an
15  "eyewitness" to the crimes, Falisha Decatur.   (Lodgment 5 at 8;
16  Lodgment 6 at 9-10; Answer, Ex. G at 124-25 (citing Police Report
17  #122259 at 5)).

18       At trial, Falisha Decatur testified that she had glanced at the
19  shooter and noticed that he had a bald head and brown skin.  (RT at
20  910, 890-91).   Although Falisha had previously identified a
21  photograph of Petitioner as the shooter and a photograph of the
22  Toyota Camry as the shooters' car, she was unable to identify
23  Petitioner at trial.   (RT at 890-91).   On cross-examination, trial
24  counsel asked Falisha if she remembered whether she told police on
25  the day of the shootings that she did not see the shooter or the
26  shooters' car.   (RT at 907).   Falisha responded that she did not
27  remember making that statement.   (RT at 907-08).   Although trial
28  counsel attempted to refresh Falisha's memory with a copy of the

                                    11

statement that she gave to police on the day of the shootings, Falisha repeatedly claimed that she could not remember what she told police. (RT at 905, 907-08).

During a side-bar conference with counsel, the trial court noted that generally, if a witness' claimed failures of recollection were false, the witness' prior statements could be introduced as prior inconsistent statements. (RT at 913). However, the trial court found that Falisha's failure of recollection appeared to be genuine. (RT at 913). Trial counsel then attempted to refresh Falisha's memory with a second police report, but was unsuccessful. (RT at 914-15).

Although Falisha's prior statement would have had impeachment value, Petitioner cannot establish prejudice, given the damaging testimony offered by Foster. Foster, who had played basketball with Petitioner, positively identified Petitioner as one of the shooters. Whitten also told police about Petitioner's admissions that he was responsible for the murder of Danielle Decatur. In light of the evidence introduced at trial, it is not reasonably probable that the jury would have reached a different result if it had been informed that Falisha told police on the day of the shootings that she did not see the shooter or the shooter's car. The state court's denial of this claim was not objectively unreasonable. *Strickland*, 466 U.S. at 697.

**B.   Ground Two: Ineffective Assistance of Appellate Counsel**

Petitioner claims that appellate counsel provided ineffective assistance by failing to raise on direct review the claims set forth in Ground One of the Petition. However, as discussed above, the

1   claims raised in Grounds One are without merit.  Thus, Petitioner

2   cannot show that he was prejudiced by appellate counsel's failure to

3   raise such claims on direct review to the California Court of Appeal.

4   *See Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985)(stating that

5   failure to raise a meritless argument on appeal does not constitute

6   ineffective assistance); *Gustave v. United States*, 627 F.2d 901, 906

7   (9th Cir. 1980)("[t]here is no requirement that an attorney appeal

8   issues that are clearly untenable"); *Smith v. Robbins,* 528 U.S. 259,

9   287 (2000)(appellate counsel does not have a constitutional duty to

10  raise every non-frivolous issue requested by a defendant); *Barnes*,

11  463 U.S. at 754.

12      **C.   Ground Three: Prosecutorial Misconduct**

13      Petitioner contends that the prosecutor violated due process by

14  failing to disclose fingerprint evidence to the defense, arguing to

15  the jury that there were no fingerprints in the shooters' car, and

16  presenting gang evidence in an improper manner.

17          **1.   Fingerprint Evidence**

18      Petitioner contends that the prosecutor knowingly withheld

19  exculpatory evidence by failing to disclose the fingerprint evidence

20  to Petitioner's counsel.  As discussed above, a Los Angeles Police

21  Department report revealed that five fingerprints were lifted from

22  the stolen Toyota Camry that was driven by the shooters.  One print

23  belonged to the owner of the car and one print belonged to a police

24  officer.   The other three prints did not belong to Petitioner,

25  Johnson and Conley and were never identified.  (Ex. I at 147).

26      The government has a duty to disclose evidence favorable to the

27  accused when it is material to guilt or punishment.  *See Brady v.*

28  *Maryland*, 373 U.S. 83, 87 (1963).  There are three components of a

13

1    *Brady* violation: the material evidence "must be favorable to the

2    accused, either because it is exculpatory, or because it is

3    impeaching; that evidence must have been suppressed by the State,

4    either willfully or inadvertently; and prejudice must have ensued."

5    *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

6       Assuming, without deciding, that the prosecutor withheld the

7    fingerprint evidence, revelation of such evidence would not have

8    materially enhanced Petitioner's ability to present a defense or

9    otherwise challenge his conviction.  As stated above, the presence

10    of other fingerprints does nothing to undermine the eyewitness

11    testimony identifying Petitioner as one of the shooters.  Even if the

12    fingerprints were matched to a person, there is no evidence that any

13    other person was implicated in the shootings.  Thus, Petitioner has

14    not established that the fingerprint evidence was material or that

15    Petitioner was prejudiced.  Accordingly, Petitioner is not entitled

16    to habeas relief on this claim.

17       **2.   Knowing Presentation of False Evidence**

18       Petitioner contends that the prosecutor committed misconduct,

19    in violation of due process, by incorrectly arguing to the jury that

20    there were no fingerprints in the stolen Toyota Camry.   During

21    closing argument, the prosecutor made the following statement

22    concerning fingerprints:

23          About three blocks away [from the location of

24          the shooting] a car matching the exact

25          description of the car the defendants were in

26          pulls up, three to four young male Blacks in the

27          car wearing glasses, beanies and gloves[,] . .

28          gloves just like Alex Liggins said Defendant

1              Canady was wearing, just like Shonta Whitten

2              said Defendant Canady was wearing . . . . I

3              wonder why there were no fingerprints?

4   (RT at 2451).

5       In rebuttal argument, the prosecutor stated:

6              How does the fact that there were no

7              fingerprints found in the car, nobody's

8              fingerprints, not just not the defendants'

9              fingerprints, no fingerprints, how does that

10             help the defense? How is that any evidence that

11             these defendants didn't commit this crime? It's

12             not. The fact that there were no fingerprints

13             found in the car means that there were no

14             fingerprints in the car and that's all it means.

15  (RT at 2589-90).

16      A defendant's due process rights are violated when a

17  prosecutor's misconduct renders a trial "fundamentally unfair." *See*

18  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Prosecutorial

19  misconduct is reviewed "'on the merits, examining the entire

20  proceedings to determine whether the prosecutor's remarks so infected

21  the trial with unfairness as to make the resulting conviction a

22  denial of due process.'" *Johnson v. Sublett*, 63 F.3d 926, 929 (9th

23  Cir. 1995).

24      Here, the prosecutor argued that although Petitioner's,

25  Johnson's and Conley's fingerprints were not recovered from the

26  Toyota Camry, the absence of such evidence did not establish that

27  they were not the shooters. (RT at 2451, 2589-90). In other words,

28  the prosecutor was simply arguing a reasonable inference based on the

1  evidence presented.  *See United States v. Atcheson*, 94 F.3d 1237,

2  1244 (9th Cir. 1996)("It is not misconduct for the prosecutor to

3  argue reasonable inferences based on the record.")(citation omitted).

4  Thus, the challenged statements did not amount to prosecutorial

5  misconduct.   Moreover, even if the prosecutor was inaccurate in

6  stating that there were no fingerprints found in the Toyota Camry,

7  it did not render Petitioner's trial fundamentally unfair.   Indeed,

8  even Petitioner's counsel stated during closing argument that there

9  were no fingerprints found in the shooters' car:

10              But what's significant about a lot of the

11              evidence is what you don't have and what you

12              weren't given . . . . [¶]   [The prosecutor]

13              talked about gloves on one person but there no

14              fingerprints identifiable to anybody, . . . none

15              on the car, none on a casing, nowhere, none on

16              any car.

17  (RT at 2490).   Further, as discussed above, Foster's eyewitness

18  identification of Petitioner as being the shooter, together with

19  Whitten's    statements    concerning    Petitioner's    admissions,   was

20  significant evidence establishing Petitioner's guilt.   Under such

21  circumstances, any error was harmless.   *Shaw v. Terhune*, 380 F.3d

22  473, 478 (9th Cir. 2002)("Prosecutorial misconduct which rises to the

23  level of a due process violation may provide the grounds for granting

24  a habeas petition only if that misconduct is deemed prejudicial under

25  the 'harmless error' test articulated in *Brecht v. Abrahamson*, 507

26  U.S. 619, 637-38 (1993)").

27          **3.    Improper Use of Gang Evidence**

28      Petitioner contends that the prosecutor introduced evidence of

                                    16

1 | Petitioner's gang activity "in a manner that [was] not lawful."
2 | (Petition at 6).

3 | The alleged erroneous admission of evidence is not subject to
4 | federal habeas review unless a specific constitutional guarantee is
5 | violated or the error is of such magnitude that the result is a
6 | denial of the fundamentally fair trial guaranteed by due process.
7 | *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999). Admission
8 | of evidence violates due process only when two circumstances are met:
9 | (1) "there are no permissible inferences the jury may draw from the
10 | evidence" and (2) the evidence is "of such quality as necessarily
11 | prevents a fair trial." *Jammal v. Van de Kamp*, 926 F.2d 918, 920
12 | (9th Cir.1991) (quotations and citation omitted). Moreover, juries
13 | are presumed to follow a court's limiting instructions with respect
14 | to the purposes for which evidence is admitted. *See Aguilar v.*
15 | *Alexander*, 125 F.3d 815, 820 (9th Cir. 1997).

16 | Here, the theory of the prosecution was that Petitioner,
17 | Johnson, and Conley went into Hoover gang territory to find and
18 | murder Dumar Fisher because he was a member of the Hoover gang, which
19 | was a rival of Petitioner's and Canady's Playboy gang. Clearly, the
20 | gang affiliation evidence was properly admitted as evidence of motive
21 | to commit the Decatur shooting, as well as to prove the gang
22 | enhancements. In addition, the gang evidence was relevant to show
23 | that some witnesses (Foster and Whitten) may have recanted their
24 | statements incriminating Petitioner, due to fear of retaliation.
25 | Thus, Petitioner fails to carry his burden on collateral appeal to
26 | establish that there were no permissible inferences that a jury could
27 | draw from the gang evidence.
28 | \\

**D.   Ground Four: Biased Juror**

Petitioner contends that his constitutional right to a fair trial by an impartial jury was violated when a biased juror, Juror No. 4, was permitted to serve on the jury.

One morning during trial, Juror No. 4 informed the trial court that his 22-year old nephew had recently died in a car accident. (RT at 1005-06). Juror No. 4 stated that he might need to be relieved of jury service in order to attend a funeral later that week. (RT at 1005). In a sidebar conference with Juror No. 4 and counsel, the trial court asked Juror No. 4 whether he would prefer to be excused or whether he felt he could still concentrate on the trial. (RT at 1006). Juror No. 4 responded that he was not sure, but that he wanted to try "and see how it goes." (RT at 1006). When asked about whether criminal activity had been involved, Juror No. 4 responded that his nephew and some friends had simply been involved in a car accident on the way home from ski trip. (RT at 1007). Petitioner's counsel then engaged in the following colloquy with Juror No. 4:

> Petitioner's Counsel: You heard that there are some very young people in this case that got killed. Do you think that that might affect you in any way in terms of your feeling?
>
> Juror No. 4: Sympathy for the other side. Like I said he was a young man, 22 years old. I have six children. I will try.

(RT at 1007-08). The trial court informed Juror No. 4 that he should just raise his hand if, at any point in the proceedings, he began to feel that he should not serve as a juror. (RT at 1008).

1    Three days later, Juror No. 4 informed the trial court and
2    counsel that the funeral services for his nephew were going to be
3    held the coming weekend.  The trial court responded that it had been
4    watching Juror No. 4 and he seemed to be attentive.  (RT at 1457).

5    The Ninth Circuit analyzes juror bias under two theories, actual
6    bias and implied bias.  "Actual bias is bias in fact--the existence
7    of a state of mind that leads to an inference that the person will
8    not act with entire impartiality."  *Fields v. Brown*, 431 F.3d 1186,
9    1193 (9th Cir. 2005)(citations omitted).   The determination of
10   whether a juror is actually biased is a question of fact.  *Dyer v.*
11   *Calderon*, 151 F.3d 970, 973 (9th Cir. 1998).

12   Here, the record demonstrates that Juror No. 4 was not actually
13   biased.   In ruling on co-defendant Johnson's habeas petition, the
14   trial court found that Juror No. 4 had "agreed to raise his hand if
15   he felt it was too much for him to continue on or if he felt it would
16   be better if he not serve," and "Juror No. 4 never raised his hand
17   thereafter to indicate that he could not be fair or could not
18   concentrate."    (Ex. J at 166).    Based on the record, it was
19   reasonable for the trial court to find that Juror No. 4 put aside
20   what happened to his nephew and his feelings for his children, and
21   did not confuse it with what he had to decide about Petitioner.
22   There was no evidence that he lied to conceal any bias.

23   Any argument that Juror No. 4 was impliedly or presumptively
24   biased also fails.   The Ninth Circuit permits defendants alleging
25   juror partiality to proceed on theories of actual or implied bias.
26   *United States v. Plache*, 913 F.2d 1375, 1378 (9th Cir. 1990).
27   However, bias may be implied only in exceptional circumstances.
28   *McDonough Power Equip. v. Greenwood*, 464 U.S. 548, 556-57 (1984)

1  (Blackmun, J., concurring) (citing *Smith v. Phillips*, 455 U.S. 209,

2  215-16 (1982)).   Bias has been implied where (1) a juror has

3  prejudicial information about the defendant; (2) a juror has a

4  personal connection to the defendant, victim, or witnesses; or (3)

5  a juror or a close relative of the juror has been involved in a

6  situation involving similar facts.  *Coughlin v. Tailhook Ass'n*, 112

7  F.3d 1052, 1062 (9th Cir. 1997); see *also Dyer v. Calderon*, 151 F.3d

8  970, 973 (9th Cir. 1998) (en banc) (implying bias from juror's

9  pattern of lying about similar crime perpetrated against her

10  relative).   Extreme instances of juror deception may also result in

11  a finding of implied bias.  *See Green v. White*, 232 F.3d 671, 677-78

12  (9th Cir. 2000)(implying bias from juror's excessive, deliberate

13  lies).   In this case, the Court finds no factual predicate on which

14  bias should be inferred or presumed.   Juror No. 4's conduct during

15  the trial does not warrant the conclusion that this is one of the

16  rare and "extreme situations" a court implies the existence of bias.

17  *Tinsley v. Borg*, 895 F.2d 520, 527 (9th Cir. 1990).   Nothing that

18  Juror No. 4 said or did suggested any bias against Petitioner.

19  Accordingly, Petitioner is not entitled to habeas relief on this

20  claim.

21       **E.    Ground Five: Limitations on Cross-Examination of the Gang**

22  **Expert**

23       Petitioner claims that the trial court improperly restricted his

24  cross-examination of one of the prosecution's gang experts, Los

25  Angeles Police Officer Roger Guzman.

26       On direct examination, Officer Guzman testified that the

27  shootings were gang-motivated.  He explained that Petitioner's gang,

28  the Playboy gang, was an "up and coming" gang seeking to enhance its

1  reputation by killing members of its rival gang, the Hoover gang.

2  Foster, Dumar, and Danielle DeCatur were all members of the Hoover

3  gang.   (RT at 1444-45).   On cross-examination, Petitioner's trial

4  counsel asked Officer Guzman about other possible motives for the

5  shootings.   For example, trial counsel asked Office Guzman, "Isn't

6  it possible that this could have been a drug killing?" and "Did it

7  ever cross your mind that [rivalries over a girlfriend] might be a

8  possibility as to the reason for the shooting?"   (RT at 1479-80).

9  The prosecutor objected to both questions on grounds of relevancy and

10 the  trial  court  sustained  the  objections.    (RT  at  1479-80).

11 Petitioner contends that the trial court improperly restricted his

12 cross-examination of Officer Guzman for bias.

13      On direct review, the California Court of Appeal held that the

14 trial  court  did  not  abuse  its  discretion  in  sustaining  the  two

15 objections.   (Answer, Ex. B at 88-89).   It found that there was no

16 evidence at trial to support an inference that the shootings were

17 drug-related or motivated by a rivalry over a girlfriend.   (Answer,

18 Ex. B at 87-88).   Because trial counsel's questions were unsupported,

19 the prosecution's objections were properly sustained.   (Answer, Ex.

20 B at 88).

21      The Supreme Court has emphasized the policy favoring expansive

22 witness cross-examination in criminal trials.   *See Olden v. Kentucky*,

23 488 U.S. 227, 231 (1988); *Davis v. Alaska*, 415 U.S. 308, 316 (1974).

24 The Confrontation Clause, however, does not guarantee unbounded scope

25 in cross-examination.   *See Delaware v. Van Arsdall*, 475 U.S. 673, 679

26 1986)("The  Confrontation  Clause  guarantees  an  opportunity  for

27 effective cross-examination, not cross-examination that is effective

28 in whatever way, and to whatever extent, the defense might wish."

1  (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985))). "[T]rial
2  judges retain wide latitude insofar as the confrontation clause is
3  concerned to impose reasonable limits on such cross examination based
4  on concerns about, among other things, harassment, prejudice,
5  confusion of the issues, the witness' safety, or interrogation that
6  is repetitive or marginally relevant. . ." *Id.* at 679.  No Sixth
7  Amendment violation occurs unless the prohibited cross-examination
8  might reasonably have resulted in "a significantly different
9  impression [of the witness' credibility]." *Id.* at 680.

10  The trial court did not violate Petitioner's right to
11  confrontation or due process when it refused to allow counsel to
12  extend the cross-examination to questions about whether the shootings
13  were drug-related or motivated by a rivalry over a girlfriend.
14  Substantial cross-examination was allowed, and the precluded
15  testimony had little to do with any defense theory of bias.  The
16  testimony trial counsel sought to elicit did not undermine Officer
17  Guzman's credibility in any substantial way, and certainly not in a
18  manner different than that accomplished by evidence which was
19  introduced.  Additional speculative questions about whether the
20  shootings were motivated by drugs or a rivalry over a girlfriend
21  would have been irrelevant.  Van *Arsdall*, 475 U.S. at 679.  The
22  jury's perception of Officer Guzman's credibility would not have been
23  significantly altered by the introduction of the additional
24  testimony.  Accordingly, the state court's rejection of this claim
25  was not contrary to nor an unreasonable application of clearly
26  established federal law.
27  \\
28  \\

**F.    Ground Six: Failure to Give Special Defense Jury Instruction**
**Regarding Expert Testimony**

Petitioner contends that the trial court violated his federal constitutional right to a fair trial by refusing to give a special pinpoint jury instruction regarding expert testimony.    Officer Guzman's knowledge about the Playboy gang was based, at least in part, on information provided by confidential sources.    (RT at 1472-74).    In particular, Petitioner requested Special Instruction No. 1, which was written by his trial counsel:

> If you find that an expert formulated an opinion on the basis of unreliable information or sources, you [may properly ignore] [should not consider] said expert's opinion in deciding whether the fact or issue for which his/her opinion was offered was proven.

(CT at 420; RT at 2337-39, 2344).    The trial court declined to give the requested instruction.

On direct appeal, Petitioner argued that the trial court's failure to give Special Instruction No. 1 violated both state law and his federal constitutional rights to a fair trial and instructions on his defense theory.    (Lodgment 1 at 17-21).    The California Court of Appeal rejected Petitioner's contention, finding that Special Instruction No. 1 merely duplicated other instructions given. (Answer, Ex. B at 91).    This decision was neither contrary to nor an unreasonable application of clearly established federal law.

A federal court may entertain an application for a writ of habeas corpus by a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the

United States."   28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (alleged violations of state law are not cognizable in a federal habeas corpus petition).   Generally, an alleged error in state court jury instructions is a matter of state law and does not invoke a constitutional question, unless the error rendered the trial so fundamentally unfair as to deny due process.   *Cupp v. Naughten*, 414 U.S. 141, 146-67 (1973); *Hayes v. Woodford*, 301 F.3d 1054, 1086 n.38 (9th Cir. 2002); *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988).   Whether the absence of a particular instruction violates the Constitution will depend upon the evidence in the case and the overall instructions given to the jury.   *See Duckett v. Godinez*, 67 F.3d 734, 743, 745 (9th Cir. 1995)("it is not reversible error to reject a defendant's proposed instruction on his theory of the case if other instructions, in their entirety, adequately cover that defense theory.")   In other words, the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.   *Estelle*, 502 U.S. at 72 (citing *Cupp*, 414 U.S. at 147).

Here, the rejection of Special Jury Instruction No. 1 did not prevent Petitioner from presenting his theory of the defense nor did it otherwise render his trial fundamentally unfair.   The substance of Special Instruction No. 1 was covered in other jury instructions given at trial.   Specifically, the jury was given the standard CALJIC instructions for evaluating expert witness testimony (CALJIC 2.80), which provided as follows:

> Witnesses who have special knowledge, skill, experience, training or education in a particular subject have testified to certain

24

1        opinions.   Any  such  witness  is  referred  to  as

2        an  expert  witness.   In  determining  what  weight

3        to  give  to  any  opinion  expressed  by  an  expert

4        witness,  you  should  consider  the  qualifications

5        and  believability  of  the  witness,  *the  facts  or*

6        *materials  upon  which  each  opinion  is  based,*  and

7        the  reasons  for  each  opinion.  [¶]  *An  opinion  is*

8        *only  as  good  as  the  facts  and  reasons  on  which*

9        *it  is  based.   If  you  find  that  any  fact  has  not*

10       *been  proved,  or  has  been  disproved,  you  must*

11       *consider  the  strengths  and  weaknesses*  of  the

12       reasons  on  which  is  based.  [¶]   You  are  not

13       bound  by  an  opinion.   Give  each  opinion  the

14       weight  you  find  it  deserves.  *You  may  disregard*

15       *any  opinion  if  you  find  it  to  be  unreasonable.*

16   (CT  at  475  (emphasis  added);  RT  at  3276).

17       The  trial  court  also  gave  Special  Instruction  No.  2,  a  pinpoint

18   instruction   regarding   Officer   Guzman's   reliance   on   hearsay

19   information:

20       Officer  Guzman,  a  gang  expert,  relied  in  part  on

21       hearsay  information  in  formulating  the  opinions

22       to  which  he  testified.   The  parties  are  entitled

23       to  know  the  bases  and  sources  for  his  opinions.

24       Officer  Guzman  refused  to  disclose  one  source  of

25       information  used  in  arriving  at  his  opinion;  you

26       should   view   said   opinion   relative   to   that

27       refusal  to  disclose  with  caution.

28   (CT  at  476;  RT  at  2376-77).   Further,  the  trial  court  instructed  on

1  evaluating lay witness opinion testimony (CALJIC No. 2.81) and
2  hypothetical questions posed to an expert witness (CALJIC No. 2.82).
3  (CT at 477-78).   The instructions given adequately permitted jury
4  consideration of the defense case.   The jury simply rejected
5  Petitioner's version of the events, finding that both Petitioner and
6  co-defendant Johnson committed the Danielle Decatur murder and
7  attempted murders "for the benefit of, at the direction, and in
8  association with a criminal street gang with the specific intent to
9  promote, further and assist in criminal conduct by gang members."
10 (CT at 547-54).   Accordingly, Petitioner is not entitled to relief
11 on this claim.

12 **G.    Ground Seven:  Release of Juror Information**

13         Petitioner contends that the trial court erred in denying his
14 post-trial request for release of juror identifying information.

15         After the jury verdicts were returned and prior to sentencing,
16 the trial court sent the jurors a questionnaire regarding their jury
17 experience.    Ten jurors, some of whom may have been alternates,
18 returned the questionnaire.  (RT at 2686).  In particular, one juror,
19 referred to by the parties as "Juror X," answered the question, "What
20 did you dislike about your service in this case?"  with, "Just the
21 attitudes of others in aspects of the way they judged the defendants.
22 (race, etc.)" (RT at 2686).  A copy of Juror X's questionnaire, along
23 with the other completed questionnaires were given to the prosecutor
24 and defense attorneys, after identifying juror information had been
25 redacted.   (CT at 571; RT at 2684-85).  Based on Juror X's response,
26 Petitioner filed a motion for new trial based on juror misconduct.
27 (Augmented Clerk's Transcript ("Aug. CT") at 1-12; RT at 2684-99).
28 In the alternative, Petitioner sought release of juror identifying

information.    (Aug. CT at 1-12).  Petitioner claimed that Juror X's statement indicated the verdict was improperly based on racial bias. (RT at 2686).

At the hearing on Petitioner's motion, the trial court decided to send a letter in an attempt to clarify what Juror X meant when she responded that she dislikes "the attitudes of others in aspects of the way they judged the defendants. (race, etc.)" (RT at 2687, 2698; Answer, Ex. A at 77).

Juror X did not respond to the trial court's letter.   When telephoned by the court clerk, Juror X stated that she did not know that her responses to the questionnaire would be shared with anyone other than the trial court.  (RT at 2705, 2709).  Juror X indicated that she was reluctant to take further action and needed to think about whether she would respond to the trial court's question.  (RT at 2709).   A few weeks later, the court clerk left a follow-up telephone message for Juror X, but Juror X did not respond.  (RT at 2709).

The trial court concluded Petitioner had failed to establish good cause for release of the juror information.  (RT at 2712-13). The trial court noted that no juror reported any misconduct during deliberation and Juror X was not afraid to speak up.  (RT at 2714). There was a presumption that the jury followed their oath and the instructions of the court.  (RT at 2714).   The trial court also cited Juror X's demeanor and apparent refusal to be contacted and the court's unwillingness to put the jurors' safety and privacy in jeopardy.  (RT at 2713-15).  To keep Juror X's identity anonymous, the trial court stated additional reasons for its ruling in an *in camera* hearing.  (RT at 2715-16).

1    Several days later, the trial court received a response from

2  Juror X.[4]  (Answer, Ex. A at 77).  In short, Juror X stated that she

3  felt "very strongly about being fair and [] felt that perhaps some

4  of the other jurors jumped to judgement throughout [the] case."

5  (Answer, Ex A at 77-78).  She also stated that she felt that all of

6  the jurors gave the trial their "full attention and best judgement."

7  (Answer, Ex. A at 78).  The trial court found that in making her

8  original statement in response to the questionnaire regarding "race,

9  etc." Juror X was merely "expressing a visceral feeling unsupported

10  by any objective manifestation of bias or misconduct."  (Answer, Ex.

11  A at 76).  Therefore, the trial court reaffirmed its decision to deny

12  Petitioner's motion for release of juror information/motion for new

13

14        [4]    Juror X responded as follows:

15              8/26/01 - Please excuse me for delaying in
16              responding to your letter.  The following is
              solely an OPINION and doesn't in any way question
17              the integrity of the other jurors, which I am sure
              gave it their all to make an appropriate
18              [judgment] just like I did.  I just feel very
              strongly about being fair and I felt that perhaps
19              some of the other jurors jumped to judgement
              throughout this case.  What I mean is that I, as a
20              person of color, would not like race or community
              in which these defendants are or live in play a
21              role in their judgement.  I have been a victim of
              racism and really hope this didn't play a role in
22              the verdict.  It['s] like I said I'm sure that the
              other jurors judgement [words cut off from fax
23              transmission] verdicts there was a split decision
              and I felt very strongly about this case.  When I
24              mentioned attitudes of others I meant to say that
              there was a huge difference in my feelings versus
25              the other jurors.  I in no way meant any harm by
              what I wrote to you.  These are solely OPINIONS.
26              It was a very rewarding but _emotional_ experience
              to me to be a juror and I was just and still am
27              very emotional about all this.  I hope and believe
              that we all gave this trial our full attention and
28              best judgment.
    (Answer, Ex. A at 77-78 (emphasis in original)).

1  trial.   (Answer, Ex. A at 76).

2       On direct review, the California Court of Appeal held that the
3  trial  court  properly  denied  Petitioner's  request  for  juror
4  information.  (Ex. B at 97); see Cal. Penal Code § 237.  It explained
5  that the trial court properly found that Juror X's statements about
6  deliberations reflected nothing more than her "subjective impression
7  of the possible thought processes of her fellow jurors, and did not
8  indicate the existence of juror misconduct."  (Answer, Ex. B at 97).
9  In particular, it noted that Juror X "went out of her way to explain
10 that she did not mean to impugn the integrity of her fellow jurors,
11 whom she believed gave the trial their full attention and best
12 judgment."  (Answer, Ex. B at 98).

13      Petitioner's claim that the trial court erred by failing to
14 disclose confidential juror information is a matter of state law and
15 is not cognizable on habeas review.  28 U.S.C. § 2254(a); Estelle v.
16 McGuire, 502 U.S. at 67-68. But even assuming that Petitioner is
17 asserting a claim of juror misconduct, his claim is still without
18 merit.

19      Affidavits and statements by jurors may not ordinarily be used
20 to impeach a verdict once the jury has been discharged unless
21 extraneous influence has invaded the jury room.  McDonald and United
22 States Fidelity and Guaranty Company v. Pless, 238 U.S. 264, 267-69
23 (1915); Mattox v. United States, 146 U.S. 140, 148-49 (1892).  Juror
24 X's statements address matters which occurred during the course of
25 deliberations and do not involve the jury's consideration of
26 extrinsic material.  In particular, her speculations regarding the
27 other jurors' motives and thought processes in reaching the verdict
28 concerned only the deliberations.  Absent an allegation that

1  extraneous prejudicial information was brought to the jury's

2  attention, this Court may not review the jury's deliberative process.

3  *See United States v. Davis*, 960 F.2d 820, 828 (9th Cir. 1992); *United*

4  *States v. Pimentel*, 654 F.2d 538, 542 (9th Cir. 1981). Petitioner's

5  allegations concerning Juror X's speculation as to the other jurors'

6  beliefs and motives must therefore be rejected. Petitioner is not

7  entitled to habeas relief on this claim.

8  **H.   Ground Eight:  Sufficiency of the Evidence**

9       Petitioner argues that there was insufficient evidence to

10  support the jury's finding that Petitioner personally inflicted great

11  bodily injury upon Falisha Decatur (Cal. Penal Code § 12022.7(a)),

12  and personally discharged a firearm causing great bodily injury to

13  Falisha Decatur (Cal. Penal Code § 12022.53(d)).   (CT at 237-38,

14  549).

15       Under the Due Process Clause of the Fourteenth Amendment, a

16  defendant cannot be convicted of a crime unless he has been found

17  guilty of every fact necessary to establish the crime beyond a

18  reasonable doubt. *See In re Winship*, 397 U.S. 358, 365 (1970).  When

19  a federal habeas court reviews a sufficiency of the evidence claim,

20  however, the appropriate inquiry is whether, "after viewing the

21  evidence in the light most favorable to the prosecution, *any* rational

22  trier of fact could have found the essential elements of the crime

23  beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319

24  (1979)(emphasis in original); *see Payne v. Borg*, 982 F.2d 335, 338

25  (9th Cir. 1992)(federal habeas court's job is not to determine

26  whether it is satisfied that the evidence established guilt beyond

27  a reasonable doubt).   In applying the *Jackson* standard, the Court

28  looks to state law to determine what evidence is needed to support

1   a conviction on the crime charged. *Jackson*, 443 U.S. at 324, n.16;

2   *Panther v. Hames*, 991 F.2d 576, 581 (9th Cir. 1993). Moreover, on

3   habeas review the Court must apply the *Jackson* standard "with an

4   additional layer of deference." *Juan H. v. Allen*, 408 F.3d 1262,

5   1274 (9th Cir. 2005). The Court must ask "whether the decision of

6   the California Court of Appeal reflected an 'unreasonable application

7   of' *Jackson* to the facts of this case." *Id.* at 1275.

8       The California Court of Appeal held that the evidence against

9   Petitioner was sufficient to uphold his conviction. (Answer, Ex. B

10  at 88-90). The Court agrees with the California Court of Appeal.

11       Great bodily injury is a "significant and substantial physical

12  injury." *See* Cal. Penal Code § 12022.7(f); *see People v. Armstrong*,

13  8 Cal.App.4th 1060, 1066 (1992); *see* CALJIC No. 17.20 (defining

14  "great bodily injury" as meaning "a significant or substantial

15  physical injury). To demonstrate "significant and substantial

16  injury," permanent or protracted impairment, disfigurement, or loss

17  of function is not required. *People v. Escobar*, 3 Cal.4th 740, 748-

18  50 (1992).

19       Here, Falisha Decatur testified that she incurred cuts on her

20  arm from shattered glass and that one piece of glass still remained

21  embedded in her arm at the time of trial. (RT at 881-82). Foster

22  identified Petitioner as a shooter. Based on this evidence, a

23  reasonable jury could have concluded that the prosecution proved

24  beyond a reasonable doubt that she suffered "great bodily injury" as

25  defined in California Penal Code § 12022.7(a) and California Penal

26  Code § 12022.53(d) and that Petitioner was the one who inflicted it.

27  *See, e.g., People v. Jung*, 71 Cal.App.4th 1036, 1042 (1999)(a one

28  inch long laceration, requiring five to six stitches, has been held

to be great bodily injury); *Escobar*, 3 Cal.4th at 750 ("Abrasions, lacerations, and bruising can constitute great bodily injury."); *People v. Muniz*, 213 Cal.App.3d 1508, 1420 (1989)(bruises and severe swelling of eye area lasting four months); *People v. Sanchez*, 131 Cal.App.3d 718, 733-734 (1982)(multiple "serious" abrasions, lacerations, bruises, and swelling); *People v. Jaramillo*, 98 Cal.App.3d 830, 836 (1979)(contusions, swelling, and severe discoloration visible the day after infliction).

Accordingly, Petitioner's sufficiency of the evidence argument as to both of these enhancements must be rejected. *Jackson*, 443 U.S. at 319.

I.   **Ground Nine: CALJIC 17.41.1.**

Petitioner claims that instructing the jury with CALJIC No. 17.41.1[5] chilled jury deliberations in violation of his due process and Sixth Amendment rights. (Petition at 8B.)  This claim, however, is foreclosed by the Ninth Circuit's decision in *Brewer v. Hall*, 378 F.3d 952, 955-57 (9th Cir. 2004).  In *Brewer*, the Ninth court held that, regardless of the "constitutional merits" of CALJIC No. 17.41.1, there is "no Supreme Court precedent clearly establishing" that its use violates a defendant's constitutional rights.  *Id.* at 955-56.  Here, as in *Brewer*, Petitioner "has pointed to no Supreme

---

[5]    CALJIC No. 17.41.1 (1998) provides:
The integrity of a trial requires that jurors, at all times during their deliberations, conduct themselves as required by these instructions. Accordingly, should it occur that any juror refuses to deliberate or expresses an intention to disregard the law or to decide the case based on penalty or punishment, or any other improper basis, it is the obligation of the other jurors to immediately advise the Court of the situation. (CT at 540).

1  Court precedent clearly establishing that CALJIC 17.41.1--either on

2  its face or as applied to the facts of his case--violated his

3  constitutional rights."   *Id.* at 957.   Thus, the state court's

4  rejection of Petitioner's claim was not contrary to or an

5  unreasonable application of clearly established Supreme Court

6  precedent.   28 U.S.C. § 2254(d).

7

8  **IV.   Recommendation**

9      For the reasons stated above, I respectfully recommend that the

10  Petition be **DENIED**.

11  DATED:     August 4, 2006

12

13                                   _____

                                     Marc L. Goldman
14                                   United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28